**Arthur DWYER et al.,
Plaintiffs-Appellants,**

v.

**CLIMATROL INDUSTRIES, INC., et al.,
Defendants-Appellees.**

**No. 75–2119.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 28, 1976.
Decided Nov. 1, 1976.

Leonard W. Schulz, Big Bend, Wis., Eugene A. Kershek, West Allis, Wis., for plaintiffs-appellants.

Herbert P. Wiedemann, Stanley S. Jaspan, Milwaukee, Wis., M. Jay Whitman, Detroit, Mich., George F. Graf, Milwaukee, Wis., for defendants-appellees.

Before HASTINGS, Senior Circuit Judge, and TONE and BAUER, Circuit Judges.

HASTINGS, Senior Circuit Judge.

We are concerned here primarily with the validity of a plant closedown agreement and its relationship to a relevant collective bargaining agreement and its kindred pension plan agreement. The federal district court[1] granted the motions of the defendant Company and defendant Unions for summary judgment and entered judgment thereon dismissing the plaintiffs' action. Plaintiffs appeal. We affirm.

The underlying cause of action was brought pursuant to Section 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a) (1970). Plaintiffs were Arthur Dwyer and 35 other former employees of Climatrol Industries, Inc. (Climatrol), all of whom were former members of the International Union, United Automobile, Aerospace and Agricultural Implement

---

1. The United States District Court for the Eastern District of Wisconsin, the Honorable Myron L. Gordon, Judge, presiding.

Workers of America (UAW) and its Local 409 (together referred to as the defendant Unions).[2] Named as defendants were Climatrol and the defendant Unions.

In their complaint plaintiffs charged a breach of the collective bargaining agreement and the subject pension plan agreement executed March 1, 1970, between Climatrol and the defendant Unions, covering employees at Climatrol's Milwaukee, Wisconsin, facility, and sought to hold defendants liable for the amount required to fully fund the pension plan agreement.

On December 1, 1970, Fedders Corporation, a New York corporation, became the successor in interest of Climatrol and thereby became bound by the March 1, 1970, collective bargaining and pension plan agreements executed by Climatrol. Despite strong pressure from the defendant Unions, Fedders announced on June 29, 1971, its final decision to close its Milwaukee plant.

As early as June 30, 1971, the defendant Unions began negotiations with Fedders on the impact of the plant closing. A Union proposed closedown agreement demanded increases of contractual benefits, and major increases in the area of pensions, insurance and severance. On October 8, 1971, Fedders refused to accept the tendered plan, and after a month's impasse, proposed a counteroffer, with actuarial figures and bids from insurance companies on annuity contracts. Upon mature consideration and recommendation by the elected bargaining committee of Local 409, the UAW joined in accepting Fedders' proposed closedown agreement. The subject closedown agreement was duly executed December 15, 1971, by Local 409, the UAW and Fedders.

Certain provisions of the pension plan agreement are critical to the determination of the subject matter of this litigation—the closedown agreement.

Article XII of the pension plan agreement provides:

"Amendment and Duration of the Plan

12.01 The Plan may be modified, altered or amended upon mutual agreement of the Company and the Union."

Under Section 12.03, the pension plan agreement was to remain in full force and effect until March 1, 1973, when it would be proper subject matter for the next collective bargaining negotiations.

Article V, Section 5.01, of the closedown agreement amended the terms of Section 9.01 of the pension plan agreement, as follows:

"9.01 The Company will contribute, not later than February 15, 1972, $160,000 to the Trust Fund, and upon payment of such amount, the Company shall have no further funding obligation under the Plan."

Fedders paid the $160,000 into the Trust Fund and considered its obligation under the pension plan fully satisfied. The defendant Unions agreed.

It is relevant to note here that Fedders and the defendant Unions in no way modified the provisions of Section 13.01 of the pension plan, which section defines how funds in the Trust Fund of the plan should be allocated upon termination of the plan. The benefit provisions of the pension plan were not altered. The $160,000 additional contribution to the Trust Fund by Fedders was allocated in accordance with the preexisting allocation formula.

The issues raised on this appeal seem to be those in fact which were considered by the district court in its well-reasoned opinion, reported as *Dwyer v. Climatrol Industries, Inc.,* E.D.Wis., 403 F.Supp. 683 (1975). Such issues may be stated as:

1. Whether the plaintiff employees of the Company had a *vested property interest* in the pension plan agreement of March 1, 1970, which may not be terminated without their consent.

---

**2.** Plaintiffs sought to maintain this action as a class action, pursuant to Rule 23, Federal Rules of Civil Procedure, but the district court denied such motion, holding that "the named plaintiffs

may seek relief only on behalf of themselves." This denial is not an issue before us on this appeal.

2. Whether the Company and the Union are *estopped* from terminating the pension benefits.

3. Whether the Union breached its duty of *fair representation* by agreeing to the closedown agreement.

## 1. VESTED PROPERTY INTEREST

It seems to be conceded that a union has no authority on behalf of its membership to bargain away vested or accrued rights. The key question here, of course, becomes whether plaintiffs in fact or in law had any vested rights which were bargained away by the defendant Unions, and, if so, how did such rights become vested.

At the outset, it seems relevant to notice again the express language of Section 12.01 of the pension plan agreement, *supra*, which states the plan "may be modified, altered or amended upon mutual agreement of the Company and the Union." Did the defendant Unions have the legal capacity to change the pension plan agreement as was done through Article V, Section 5.01, of the closedown agreement in amending Section 9.01 of the pension plan agreement, *supra*?

It appears that such legal capacity did exist, in light of our language in *Waters v. Wisconsin Steel Works of International Harvester Co.*, 7 Cir., 427 F.2d 476, *cert. denied*, 400 U.S. 911, 91 S.Ct. 137, 27 L.Ed.2d 151 (1970). There, in addressing the collective bargaining legitimacy we stated: "Since parties to a labor contract are always free to amend their agreements, we do not see how an amendment through the ordinary processes of collective bargaining can be considered a breach of contract." *Id.* at 489.

Plaintiffs argue that this cannot be applied to their *vested rights*, relying principally on *Hauser v. Farwell, Ozmun, Kirk & Co.*, D.C.Minn., 299 F.Supp. 387 (1969). This case did not stand for the proposition that funds became vested according to the existing allocation formula, and that once the decision had been made to terminate the pension plan, the union lacked capacity to negotiate reallocation of those remaining funds. In *Hauser*, the employer and the union were attempting to modify the allocation of *funds previously contributed to the pension plan*, and accordingly were no longer subject to collective bargaining by the union.

By contrast, however, in the case at bar, the closedown agreement affected only *future* contributions to the pension plan, a subject over which the defendant Unions, as the exclusive bargaining representative of the employees involved, had complete and sole authority to negotiate. Section 9(a), National Labor Relations Act, as amended, 29 U.S.C. § 159(a).[3]

We agree with the district court that the plaintiffs had no vested interest in this pension program. The Court found that plaintiffs' rights under the pension plan agreement were subject to the terms of the contract which provided for the right to modify. Having reserved such right to modify, the contracting parties could do so without the express consent of those who might otherwise benefit therefrom. Further, the collective bargaining agreement here provides for a plant closing. *Dwyer*, 403 F.Supp. at 685.

In light of the foregoing, we hold that plaintiffs did not have an unalterable vested interest in the pension plan agreement.

## 2. ESTOPPEL

In reference to plaintiffs' second defense of estoppel, we confess to finding such defense at best to be obscure. It seems to rest upon plaintiffs' contention in their main brief, page 27, that "the plaintiffs contend that by virtue of their past service to their employer, their employer is estopped from denying its obligation to fund the pension plan these employees were

---

**3.** 29 U.S.C. § 159(a) provides in relevant part:

"Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment * * *."

promised." The preceding parts of the brief quoted seem to rely upon a "Vested Deferred Pension Benefit," etc.

We do not find that the district court specifically addressed itself to this issue. The defendants apparently do not accept this contention as a legitimate issue.

Having carefully read the various contentions of all parties, we can only conclude that there can be no liability on the defendants for failing to secure a contract right which the plaintiffs never had.

■ We hold that defendants were not estopped from denying their obligations to fund the pension plan. One cannot alter the distribution priorities provided for termination. The priorities in the pension plan agreement were faithfully and completely followed.

### 3. FAIR REPRESENTATION

Finally, plaintiffs contend that the defendant Unions breached their duty of fair representation by agreeing to the close-down agreement.

The law seems to be well established in setting the proper standards which govern a union's duty of fair representation as the exclusive bargaining representative of its members.

■ In *Vaca v. Sipes*, 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967), the Court said: "A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." The Court also cited and relied upon *Ford Motor Co. v. Huffman*, 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048 (1953), when it said that as such exclusive "bargaining representative * * * the Union had a statutory duty fairly to represent all of those employees, both in its collective bargaining * * * and in its enforcement of the resulting collective bargaining agreement, see *Humphrey v. Moore*, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370." *Vaca*, 386 U.S. at 177, 87 S.Ct. at 909. The Court went on to say that "[u]nder this doctrine, the exclusive agent's

statutory authority to represent all members of a designated unit includes a statutory obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct. *Humphrey v. Moore*, 375 U.S. at 342, 84 S.Ct. 363." *Vaca* at 177, 87 S.Ct. at 910.

In *Motor Coach Employees v. Lockridge*, 403 U.S. 274 (1971), the Court said, at 299, 91 S.Ct. 1909, at 1924, 29 L.Ed.2d 473, citing *Humphrey v. Moore* and *Vaca v. Sipes, supra*: "For such a claim [breach of duty of fair representation] to be made out, Lockridge must have proved 'arbitrary or bad faith conduct on the part of the Union.' . . . There must be 'substantial evidence of fraud, deceitful action or dishonest conduct.'" Further, that whether "these requisite elements have been proved is a matter of federal law." *Lockridge*, 403 U.S. at 299, 91 S.Ct. at 1924.

■ Finally, our court, speaking through our Brother Cummings in *Cannon v. Consolidated Freightways Corp.*, 7 Cir., 524 F.2d 290, 293 (1975), recognized the standards of the statutory duty of fair representation articulated in *Vaca v. Sipes* and *Motor Coach Employees v. Lockridge, supra*. It noted the further caveat that "proof that the union may have acted negligently or exercised poor judgment is not enough to support a claim of unfair representation." *Id.* at 294.

The record in this case, including the affidavits on file, clearly demonstrate to us that the defendant Unions engaged in fair and extensive bargaining in order to meet the problems presented by the Company's announced intention that it would close its plant in Milwaukee.

■ Relying on the standard of conduct required of a union in the cases hereinabove set out, we hold that the district court did not err in its holding in this respect in favor of the defendant Unions. Fair representation in all respects was clearly established.

In sum, we have concluded and now hold that, under the circumstances and record

present here, the judgment of the district court, granting the defendants' motions for summary judgment and dismissing the plaintiffs' action, should be and the same is now affirmed.

AFFIRMED.