**UNITED STEELWORKERS OF AMERICA, AFL-CIO, et al., Plaintiffs/Appellants,**

v.

**CORTLAND CONTAINER CORP., Defendant/Appellee.**

**No. C83-3344.**

United States District Court, N.D. Ohio, E.D.

June 30, 1989.

Mark A. Rock, Schwarzwald, Robiner, Wolf & Rock, Cleveland, Ohio, for plaintiffs/appellants.

Thomas A. Cicarella, Mark I. Wallach, D. Benjamin Beard, Calfee Halter & Griswold, Cleveland, Ohio, for defendant/appellee.

## ORDER

BATTISTI, Chief Judge.

Presently pending before this Court is Plaintiffs' appeal from the Bankruptcy Court's Order limiting their claim for damages arising from Defendant–Appellee Cortland Container Corp's rejection as Debtor-in-Possession of collective bargaining agreements in a bankruptcy proceeding under Title 11 U.S.C. Sections 1101 *et seq.* The Plaintiff–Appellants include the United Steelworkers of America, AFL–CIO, United Steelworkers of America Local Unions 2124 and 6640, the employees of Cortland Container Corp.'s Kansas City facility and retirees of Cortland Container Corp. (hereinafter collectively "Appellants").

## FACTS

Cortland Container Corp. ("Cortland") and the United Steelworkers of America ("the Union") entered an amended agreement (hereinafter "Life Insurance Agreement") which became effective on August 1, 1979. This agreement, which was to remain in effect until September 3, 1980, explained an employee's right to basic life insurance. Section 8 of this agreement reads:

Any employee who shall have retired and who shall have become entitled to basic life insurance after retirement pursuant to the provisions of the insurance agreement and booklet applicable to him at the time of his retirement shall not have such basic life insurance terminated or reduced (except as provided in such booklet) so long as he remains retired from the Company, notwithstanding the expiration of such agreement or booklet or of this Agreement, except as the Company and the Union may otherwise agree.

Cortland and the Union also entered an agreement concerning health insurance benefits entitled "Pensioners' and Surviving Spouses' Health Insurance Agreement" (herein "Health Insurance Agreement") which became effective on January 1, 1981 and was to remain in effect until December 31, 1983. In pertinent part, Section 6 of the Health Insurance Agreement provides:

Any Pensioner or individual receiving a Surviving Spouses' benefit who shall become covered by the Program established by this Agreement shall not have such coverage terminated or reduced (except as provided in this Program) so long as the individual remains retired from the Company or receives a Surviving Spouses' benefit, notwithstanding the expiration of this Agreement, except as the Company and the Union may agree otherwise.

On September 20, 1982, Cortland filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code and discontinued making payments to a plan established by the above mentioned Life and Health Insurance Agreements. Both agreements were subsequently rejected by Cortland under Title 11 U.S.C. Section 365 with approval of the Bankruptcy Court by Order dated November 12, 1982.

Appellant made no objection to the rejection. Pursuant to the November 12, 1982 Order, Appellant filed Proofs of Claims for damages resulting from the rejection and disaffirmance of the collective bargaining agreements. The Bankruptcy Court, by Memorandum of Opinion and Judgment dated June 15, 1983, 30 B.R. 715, limited

Appellants' claim to insurance premiums for one year following the filing of the petition in bankruptcy. While concluding that the insurance benefits of retired employees of Cortland had vested, the Bankruptcy Court found, as a matter of law, that the collective bargaining agreements constituted "employment contracts" within the meaning of Section 502(b)(8).[1]

Section 502(b)(8) states:

Except as provided in subsections (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court ... shall allow such claim ... except to the extent—

(8) if such claim is for damages resulting from the termination of an employment contract, such claim exceeds—

(A) the compensation provided by such contract, without acceleration, for one year following the earlier of—

(i) the date of the filing of the petition; and

(ii) the date on which the employer directed the employee to terminate or such employee terminated performance under such contract; plus

(B) the unpaid compensation due under such contract without acceleration, on the earlier of such dates ...

The Bankruptcy Court further held that, Appellants' claims were limited to the value of the insurance benefits which would have been paid during a one year period beginning at the time the bankruptcy petition was filed because the benefits did not constitute "unpaid compensation due."

A separate appeal was taken on the issue of whether the Bankruptcy Court erred in permitting Cortland to reject the collective bargaining agreement applicable to Cortland's Cleveland, Ohio facility. Judge Alvin T. Krenzler of the Northern District of Ohio concluded by his Order Dismissing Appeal dated September 24, 1983 that "the Union bargained away the rights of its retirees in the new agreement" when it executed a new collective bargaining agreement on June 30, 1983 which eliminated retiree insurance benefits. Thus the appeal was rendered moot.

The present appeal concerns the allowance of claims for insurance benefits by current employees of Cortland's Kansas City facility and all Cortland retirees pursuant to the Life and Health Insurance Agreements which were unaffected by the June 30, 1983 agreement.

## STANDARD OF REVIEW

Factual findings by the Bankruptcy Judge are not to be set aside by the District Court unless they are "clearly erroneous." Bankruptcy Rule 8013. However, questions of law decided by the Bankruptcy Court are freely reviewable. See *In re White Motor Credit Corp.*, 27 B.R. 554 (D.C.Ohio 1982) (district court may reach its own conclusions of law and is not bound by "clearly erroneous" standard when reviewing Bankruptcy Court's application of a legal standard). Resolution of the issues before this Court requires review of the Bankruptcy Court's interpretation of the collective bargaining agreements; therefore, such questions of law are to be decided by this Court de novo. *Weimer v. Kurz–Kasch, Inc.*, 773 F.2d 669 (6th Cir. 1985). The clearly erroneous standard is inapplicable to this appeal.

## DISCUSSION

Appellants argue that their entitlement to continuing life and health insurance benefits was not subject to rejection because the benefits vested, as found by the Bankruptcy Judge. However, Appellants' failure to object to the November 12, 1982 Order approving the rejection and termination of the insurance agreements precludes them from raising the propriety of the rejection upon appeal. Indeed, Appellants not only failed to object to the rejection, they even filed Proofs of Claims for

---

1. Section 502(b)(8) was redesignated as Section 502(b)(7) and the words "the claim of an employee" were inserted before "for damages" by the Bankruptcy Amendments and Federal Judgeship Act of 1984. Pub.L. No. 98–353, 98 Stat. 333, 373. The petition in the instant case was filed on September 20, 1982; therefore, Section 502(b)(8), as originally enacted, is the applicable law.

damages resulting from the rejection in accordance with the Order. Where the record is devoid of objection and the issue was not previously raised before the bankruptcy judge on motion for determination of interest or in the statement of issues presented upon appeal, the issue is not properly brought before the district court. *In re Connecticut Aerosols, Inc.*, 42 B.R. 706 (D.Conn.1984). Moreover, in their Designation of Contents of Record and Statement of Issue on Appeal, Appellants accurately state the issue properly presented to this Court: whether the Bankruptcy Court erred in limiting Appellants' claims for damages arising from the rejection of collectively bargained agreements providing for insurance benefits under Title 11 U.S.C. Section 502(b)(8).

The plain language of Section 502(b)(8) limits only those claims for damages arising out of the termination of an "employment contract." The agreements providing for insurance benefits to employees and retirees of Cortland were collectively bargained for by the Union and Cortland. Therefore, this Court must decide whether a collectively bargained agreement conferring insurance benefits constitutes an "employment contract" within the meaning of Section 502(b)(8). This Court holds, for the reasons set forth below, that such an agreement is not an employment contract subject to Section 502(b)(8).

The United States Supreme Court, in *J.I. Case Co. v. N.L.R.B.*, 321 U.S. 332, 64 S.Ct. 576, 88 L.Ed. 762 (1944), firmly established a distinction between a collectively bargained agreement setting forth the terms governing an employer-employee relationship and an employment contract which *creates* such a relationship. The Court stated:

> Collective bargaining between employer and the representatives of a unit, usually a union, results in an accord as to terms which will govern hiring and work and pay in that unit. The result is not, however, a contract of employment except in rare cases, no one has a job by reason of it and no obligation to any individual ordinarily comes into existence from it alone.

*Id.* at 334–35, 64 S.Ct. at 578–79. Although not decided in a bankruptcy proceeding, the *J.I. Case Co.* holding is instructive as the Court failed to express any intent to restrict its construction of collective bargaining agreements to non-bankruptcy cases.

The Sixth Circuit had occasion to interpret a collective bargaining agreement in an action to recover wages. In *Fraser v. Magic Chef–Food Giant Markets, Inc.*, 324 F.2d 853 (6th Cir.1963), the Court sharpened the line of demarcation between employment contracts and collective bargaining agreements, stating: "A collective bargaining agreement, in ordinary usage and terminology, does not create an employer-employee relationship nor does it guarantee the continuance of one." *Id.* at 856.

More recently, in *Heheman v. The E.W. Scripps Company*, 661 F.2d 1115, 1123 (6th Cir.1981), the Sixth Circuit again stated that an employment contract and a collective bargaining agreement were coterminous only in rare circumstances. The Court found such a case to exist where the parties had separately executed a contract guaranteeing lifetime employment and a collective bargaining agreement which designated the terms of employment and provided that the employment guarantee was to remain effective. Only by incorporating the guarantee of employment did the collective bargaining become an "employment contract."

The Eleventh Circuit has recognized that any attempt to distinguish between the scope of "employment contract" in bankruptcy and non-bankruptcy actions would be utterly without foundation. In *In re Prospect Hill Resources*, 837 F.2d 453 (11th Cir.1988), the Eleventh Circuit excluded collective bargaining agreements governing the payment of vested retirement benefits from the reach of the restrictions on damage claims in Section 502(b)(8).

The Bankruptcy Court for the Eastern District of Michigan, relying on *J.I. Case Co.*, held without reservation that "the case law clearly establishes that a collective bargaining agreement is not an employment contract" within the meaning of Section

502(b)(8). *In re Gee & Missler Services, Inc.*, 62 B.R. 841 (Bankr.E.D.Mich.1986). The Bankruptcy Court's rationale is compelling and, accordingly, this Court adopts its conclusion. "An employee is hired by an employer. When he is hired, he may become a union member and may be covered by a collective bargaining agreement which the union has negotiated with the employer. However, he is not hired by the collective bargaining agreement." *Id.* at 843–44.

The relevant case law discussed above clearly requires that an agreement must, at the very least, provide for the employment relationship itself, and not merely formulate the contours of conduct for the parties to such a relationship in order to amount to an employment contract subject to the limitations imposed by Section 502(b)(8). Having found that a collectively bargained agreement will not ordinarily constitute an employment contract within the meaning of Section 502(b)(8), this Court must conclude that the Life and Health Insurance Agreements are not employment contracts subject to Section 502(b)(8) limitations. They neither establish nor require continuance of an employer-employee relationship between Cortland and the union members. Consequently, it was an error to limit Appellants' claims for damages arising out of the rejection of the insurance agreements under Title 11 U.S.C. Section 502(b)(8).

In light of the foregoing, the issue of whether the insurance benefits constitute "unpaid compensation due" under Section 502(b)(8)(B) is irrelevant. However, whether the benefits are vested must be ascertained to determine the amounts recoverable, if any. Cortland urges that the Bankruptcy Court erred in finding that "the retirees' rights to life and health insurance vested" upon retirement.

The Sixth Circuit, in *U.A.W. v. Yard–Man, Inc.*, 716 F.2d 1476, 1482 (6th Cir. 1983), *cert. denied*, 465 U.S. 1007, 104 S.Ct. 1002, 79 L.Ed.2d 234 (1984), recognized that retirement benefits are typically a form of compensation for services rendered prior to retirement and are normally vested upon retirement. Ordinarily, the retiree need not render any further service to receive such benefits. When interpreting the provisions of a collective bargaining agreement, *Yard–Man* teaches that "the court should first look to the explicit language of the ... agreement for clear manifestations of intent" as to the vesting of retiree insurance benefits and "interpret each provision in question as part of the integrated whole."

In *Upholsterers' International Union of North America, AFL–CIO v. The American Pad & Textile Company*, 372 F.2d 427, 428 (6th Cir.1967), the Court concluded that the life insurance benefits vest "when the employee service called for is fully performed." In that case, the contract provided that, for "any employee with 15 years or more of continuous service ... at the time of retirement and having obtained the age of 65 years, the Company will continue to cover such eligible retired employees with ... life insurance." *Id.* at 427. The Court found significant difference between the above-quoted provision and a provision conferring benefits upon employees which "shall continue in full force and effect for the duration of the current Collective Bargaining Agreement." *Id.* at 428. The critical factor weighing in favor of finding that the benefits vested was the drafters' failure to similarly limit the duration of retiree benefits to expiration of the agreement.

The Life Insurance Agreement in the case at bar provides for continuance of life insurance benefits to any retiree who has "become entitled to basic life insurance after retirement pursuant to the provisions of the insurance agreement and booklet applicable to him at the time of his retirement." Similar eligibility requirements exist for persons claiming continuing benefits under the Health Insurance Agreement. Both agreements further provide that the eligible beneficiary "shall not have such [benefits] terminated or reduced ... *notwithstanding the expiration of this agreement*, except as the Company and the Union may otherwise agree." (emphasis added). The above language is much more explicit than the language in *American Pad* and clearly manifests the parties' in-

tent that accrued benefits would be unaffected by expiration of the Life and Health Insurance Agreements.

Cortland argues that, because the provisions calling for continuation of benefits included the clause "except as the Company and the Union may agree otherwise," the insurance benefits were incapable of vesting. In support of this proposition, Cortland cites *Dwyer v. Climatrol Industries, Inc.*, 544 F.2d 307 (7th Cir.1976), *cert. denied*, 430 U.S. 932, 97 S.Ct. 1553, 51 L.Ed.2d 776 (1977). Cortland's reliance on *Dwyer*, however, is misplaced. There, the Court found that former employees did not have a vested property interest in future employer contributions to a pension plan by virtue of a modification clause exercisable by the union and the employer acting in concert. 544 F.2d at 310. The *Dwyer* Court distinguished a case significantly similar to the case at bar. "In *Hauser*, the employer and the union were attempting to modify the allocation of *funds previously contributed* to the pension plan," which were no longer subject to collective bargaining by the union. *Id.* (citing *Hauser v. Farwell, Ozmun, Kirk & Co.*, 299 F.Supp. 387 (D.C.Minn.1969)). In *Dwyer*, the modifying agreement "affected only future contributions to the pension plan, a subject over which the defendant Unions, as the exclusive bargaining representatives of the employees involved, had complete and sole authority to negotiate." *Id.* at 310.

Conversely, the benefits conferred upon each beneficiary satisfying the applicable eligibility requirements noted above are not revocable by action of the Union. Once the benefits under the insurance agreements had been earned and the employee retired, or otherwise became eligible, the Union and Cortland were powerless to divest the beneficiary of his or her entitlement. A union has no authority to "bargain away retiree benefits which have already vested in particular individuals. Such rights, once vested upon an employee's retirement are interminable ..." *Allied Chemical & Alkali Workers v. Pittsburgh Plate Glass*, 404 U.S. 157, 181 n. 20, 92 S.Ct. 383, 398 n. 20, 30 L.Ed.2d 341 (1971).

Cortland circuitously argues that the modification clause, whether or not exercised, prevents the insurance benefits from vesting in individual retirees upon their retirement. Because they are non-vested, the argument continues, such benefits are vulnerable to unilateral elimination by Cortland. Were this Court to lend credence to Cortland's argument, the promise to continue payment of insurance premiums on behalf of retired Cortland employees or a surviving spouse would be illusory and nugatory. Construction of the terms of a collective bargaining agreement in this manner is to be avoided. *Yard–Man*, 716 F.2d at 1480. A mere reservation of power to modify insurance benefits under a collective bargaining agreement does not prevent such benefits from vesting in otherwise eligible beneficiaries. The Bankruptcy Court did not err in concluding that insurance benefits vested in the claimants who attained eligibility pursuant to the terms of the agreements.

The decision of the Bankruptcy Court is affirmed in part and reversed in part. Although it is reversible error to limit Appellants' claims under Title 11 U.S.C. § 502(b)(8), it is quite correct to conclude that Appellants' benefits vested upon satisfaction of the applicable eligibility requirements contained in the agreements. This case is remanded to the Bankruptcy Court for further findings as to the eligibility of individual claimants, the amounts of their respective claims and to enter judgment for such claimants accordingly.

IT IS SO ORDERED.