**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-3636
_____

LARRY LEWIS; GREG BITTINGER, on behalf of themselves and others similarly
situated; KARL BUDAY; GENE F. DAUM; RICHARD F. KUSHKOWSKI;
JOHN CROCKER; KURT SZYMANSKI; ROBERT KLUGH, SR.,
                                                        Appellants
v.

ALLEGHENY LUDLUM CORPORATION;
ALLEGHENY TECHNOLOGIES INCORPORATED
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
(D.C. No. 2-11-cv-01619)
District Judge: Hon. Joy Flowers Conti
_____

Submitted Under Third Circuit LAR 34.1(a)
May 15, 2014
_____

Before: SMITH, VANASKIE and SHWARTZ, <u>Circuit Judges</u>

(Filed: August 27, 2014)

_____

OPINION
_____

SHWARTZ, Circuit Judge.

Plaintiffs, retired employees of Allegheny Ludlum Corporation ("Allegheny Ludlum"), appeal the dismissal of their putative class action against Allegheny Ludlum and Allegheny Technologies Incorporated (collectively, "Defendants"), alleging breach of contract under both the Labor Management Relations Act ("LMRA") and the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), and breach of fiduciary duty under ERISA. For the reasons set forth below, we will affirm.

I.

As we write principally for the benefit of the parties, we recite only the essential facts and procedural history. Plaintiffs were members of the United Steelworkers union ("USW"). USW had collective bargaining agreements ("CBAs") with Defendants. The CBAs stated that the members' insurance benefits were set forth in certain agreements, which were incorporated by reference into the CBAs. The health insurance benefits for retirees were set forth in the Program of Hospital-Medical Benefits for Eligible Pensioners and Surviving Spouses ("PHMBs"). Each PHMB from 1981 through the present contained the following "Continuation of Coverage" provision:

> Any pensioner or individual receiving a Surviving Spouse's benefit who shall become covered by the Plan established by this Agreement shall not have such coverage terminated or reduced (except as provided in the Plan) so long as the individual remains retired from the Company or receives a Surviving Spouse's benefit, notwithstanding the expiration of this Agreement, except as the Company and the Union may agree otherwise.

App. 2151 (emphasis added); see also App. 1816-17, 1871, 1956, 2040, 2045-46, 2048-

49.

Certain Plaintiffs opted for early retirement pursuant to the Transition Assistance Program ("TAP"). The 2004 CBA, in which Defendants and USW agreed to the terms of the TAP, stated that TAP retirees were entitled to the health benefits offered "under the PHMB of the Allegheny Ludlum CBA." App. 1415. Thus, all Plaintiffs are covered by the PHMBs.

Prior to 2008, retirees were not required to pay for certain types of coverage under the PHMBs, but on October 24, 2007, Defendants sent a letter to Plaintiffs and other plan participants announcing that they had agreed with USW that those "no cost" provisions would be replaced by coverage that required premium payments, effective January 1, 2008.[1]

On November 18, 2011, Plaintiffs filed a Complaint[2] alleging that their "no cost" health benefits were vested, lifetime health benefits that could not be changed after retirement, and therefore the premiums charged violated the LMRA and ERISA. Plaintiffs also claim that Defendants breached their fiduciary duty under ERISA by representing to Plaintiffs, prior to their retirements, that their health benefits would be provided for life at no cost and by failing to inform them that these benefits could be

---

[1] As of January 1, 2008, a $40 (individual) and $80 (family) per month premium was imposed upon pre-Medicare-eligible retirees, and a $20 (individual) and $40 (family) per month premium was imposed upon Medicare-eligible retirees.

[2] Plaintiffs originally filed their complaint in the Northern District of Ohio, but the case was transferred to the Western District of Pennsylvania.

changed by agreement with USW.

After dismissals of the Complaint and Amended Complaint with leave to amend, the District Court granted Defendants' motion to dismiss the Second Amended Complaint with prejudice for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). This appeal followed.

II.[3]

A. Breach of Contract

Plaintiffs argue that the CBAs vested them with "no cost" lifetime health benefits and did not grant Defendants the right to change these benefits. ERISA treats the vesting of welfare plan benefits[4] differently from pension benefits by not requiring welfare plan benefits for retirees to automatically vest because the costs of such plans can fluctuate due to, among other things, increased treatment costs. U.A.W. v. Skinner Engine Co., 188 F.3d 130, 138-39 (3d Cir. 1999); see also Smathers v. Multi-Tool, Inc./Multi-

---

[3] The District Court had jurisdiction pursuant to 28 U.S.C. § 1331. We exercise jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review of an order granting a motion to dismiss and apply the same standard as the District Court. See Santomenno ex rel. John Hancock Trust v. John Hancock Life Ins. Co., 677 F.3d 178, 182 (3d Cir. 2012). When considering a motion to dismiss, we must determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content[, which is assumed to be true,] that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

[4] Welfare plans under ERISA are plans that provide "medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment . . . ." 29 U.S.C. § 1002(1).

4

Plastics, Inc. Emp. Health & Welfare Plan, 298 F.3d 191, 196 (3d Cir. 2002) (stating that a "presumption against vesting" exists in cases involving welfare benefit plans). As a result, ERISA generally allows employers, "for any reason at any time, to adopt, modify, or terminate welfare plans." Skinner, 188 F.3d at 138 (internal quotation marks and citations omitted). An employer's commitment to vest retiree welfare benefits "is not to be inferred lightly" and "must be stated in clear and express language." Id. at 139.

Here, Plaintiffs have not identified any "clear and express language" in the PHMBs that confers unalterable, vested lifetime health benefits. Id. Indeed, the "Continuation of Coverage" provision explicitly reserves the right to change the health benefits for retirees through future agreement. See App. 2151 ("except as the Company and the Union may agree otherwise"). Plaintiffs attempt to create ambiguity in the "Continuation of Coverage" provision[5] by pointing to the USW representative's deposition, Plaintiffs' own understanding, and references to the lifetime nature of the benefits elsewhere in Plan documents. These efforts are unavailing because "the words of the contract clearly manifest the parties' intent," and therefore the "[C]ourt need not resort to extrinsic aids or evidence." Baldwin v. Univ. of Pittsburgh Med. Ctr., 636 F.3d

---

[5] Plaintiffs also argue that the "Continuation of Coverage" provision in United Steelworks of America v. Cortland Container Corp., 105 B.R. 375, 376 (N.D. Ohio 1989), is "virtually indistinguishable" from the provision here, and urge us to adopt that court's conclusion, along with the conclusions of other cases addressing similar language. Appellant Br. 13-17. Those cases rely on U.A.W. v. Yard-Man, Inc., 716 F.2d 1476 (6th Cir. 1983), in which the Sixth Circuit held that there is a presumption in favor of vesting for welfare benefits. We expressly rejected Yard-Man in Skinner. 188 F.3d at 140-41.

69, 76 (3d Cir. 2011) (internal quotation marks omitted).[6] The plain language of the "Continuation of Coverage" provision makes clear that the USW and Allegheny Ludlum may agree to change the coverage provided under the PHMBs and, therefore, the provision is unambiguous. Skinner, 188 F.3d at 142; cf. In re Unisys Corp. Retiree Med. Benefit ERISA Litig. (Unisys I), 58 F.3d 896, 903-04 (3d Cir. 1995) (holding that an employer who "used terms such as 'lifetime' and 'for life' to describe the duration of retiree medical benefits, while at the same time expressly reserving the company's right to terminate the plans under which those benefits were provided, did not render plans 'internally inconsistent' and therefore ambiguous").

Plaintiffs also argue that the "agree otherwise" language in the "Continuation of Coverage" provision should be read to apply only to then-active employees (i.e., future retirees) because USW should not be allowed to "sacrifice [r]etiree interests in favor of active employees who were the dues-paying Union members." Reply Br. 9 n.4. Nothing in the CBAs or PHMBs suggests that USW's authority is restricted to matters impacting active employees. See Unisys I, 58 F.3d at 905 (rejecting plaintiffs' contention that reservation of rights provision applied only to active employees and not to current retirees).

---

[6] Further, because they are considered "subjective and self-serving extrinsic evidence," "the testimonies of union members as to their understanding or belief of the duration of their retirement benefits cannot as a matter of law create an ambiguity." Skinner, 188 F.3d at 146 (internal quotation marks omitted).

6

Plaintiffs' claim that the "Continuation of Coverage" provision creates an illusory promise because Allegheny Ludlum "has unfettered freedom, [sic] to modify or terminate the healthcare benefits," Appellant Br. 18, also fails. "An illusory promise is one containing words 'in promissory form that promise nothing' and which 'do not purport to put any limitation on the freedom of the alleged promisor.'" Flores v. Am. Seafoods Co., 335 F.3d 904, 912 (9th Cir. 2003) (quoting 2 Corbin on Contracts 142 (rev. ed. 1995)). Here, the promise was not illusory because it did not allow for modification solely by Allegheny Ludlum; instead, it allowed for modification only upon the agreement of both parties. See App. 2151 ("except as the Company and the Union may agree otherwise"). Thus, Plaintiffs' argument ignores the fact that USW is a party to the contract that must agree to any modification. The fact that retirees are impacted by the changes to the agreement does not make it illusory.

TAP retirees fare no differently. The clear language of the 2004 CBA that memorialized TAP explicitly states that TAP included "retiree health and life insurance under the PHMB of the Allegheny Ludlum CBA," App. 1415, confirming that TAP did not create a new plan. Thus, the TAP retirees are covered under the same PHMBs as non-TAP retirees, and are subject to the same "Continuation of Coverage" provision. The fact that TAP retirees were required to sign a General Waiver and Release Agreement ("Release Agreement") to participate in TAP does not change their health benefits. Even though the Release Agreement contained an integration clause and does

7

not describe retiree health benefits or refer to the PHMBs by name, it specifically incorporates by reference an "informational packet" that identifies the actual benefits being provided, including "medical coverage under a Company-sponsored medical plan for Eligible Retirees and Surviving Spouses," App. 2466, which is a reference to the PHMBs.

In sum, Plaintiffs have not identified any "clear and express language" that vests their health benefits, and therefore their breach of contract claims were appropriately dismissed.

B. Breach of Fiduciary Duty

Defendants challenge the timeliness of Plaintiffs' fiduciary duty claim. ERISA prohibits filing suit for fiduciary duty violations more than six years after "the date of the last action which constituted a part of the breach or violation," or more than three years after the plaintiff had "actual knowledge of the breach or violation," whichever is earlier.[7] 29 U.S.C. § 1113; see also Montrose Med. Grp. Participating Sav. Plan v. Bulger, 243 F.3d 773, 787 (3d Cir. 2001).

We have held that "'actual knowledge of a breach or violation' requires that a plaintiff have actual knowledge of all material facts necessary to understand that some

---

[7] In addition to finding that the three year statute of limitations barred Plaintiffs' claims, the District Court found that at least some Plaintiffs were also barred from bringing a fiduciary claim under the six year statute of limitations. Because we hold that all Plaintiffs received "actual knowledge" on January 1, 2008 and thus are barred from suit by the three year statute of limitations ending January 1, 2011, we need not address whether the six year statute of limitations applies.

claim exists, which facts could include . . . knowledge of a transaction's harmful consequences, or even actual harm." Gluck v. Unisys Corp., 960 F.2d 1168, 1177 (3d Cir. 1992) (internal citations omitted). To satisfy this requirement, Defendants must show Plaintiffs actually knew: (1) about "the events that occurred which constitute the breach or violation," and (2) that "those events supported a claim of breach of fiduciary duty or violation under ERISA." Int'l Union of Elec. Workers v. Murata Erie N. Am., Inc., 980 F.2d 889, 900 (3d Cir. 1992). The second prong can be satisfied by "actual knowledge of harm or harmful consequences." Richard B. Roush, Inc. Profit Sharing Plan v. New Engl. Mut. Life Ins. Co., 311 F.3d 581, 587 (3d Cir. 2002).

Here, Plaintiffs had actual knowledge of the purported breach of fiduciary duty no later than January 1, 2008, when they began paying increased premiums despite Allegheny Ludlum's alleged misrepresentations that they would not have to do so. Plaintiffs received notice of the event that constituted the alleged breach through the October 24, 2007 letter that stated that they would owe these premiums. Moreover, the payment obligations that went into effect on January 1, 2008 were "harm or harmful consequences" of the type sufficient to satisfy the actual knowledge requirement. See Cetel v. Kirwan Fin. Grp., Inc., 460 F.3d 494, 511-12 (3d Cir. 2006) (holding plaintiffs gained "actual knowledge" when they learned they faced financial penalties in "direct contradiction" to what they had been told by fiduciary); Kurtz v. Phila. Elec. Co., 96 F.3d 1544, 1551 (3d Cir. 1996) (holding plaintiffs gained "actual knowledge" when they

9

learned of "harmful consequences" of fiduciary's actions through monetary cost to them). Thus, because they had knowledge of the harm no later than January 1, 2008, the three year statute of limitations expired on January 1, 2011. As a result, the fiduciary duty claim asserted in the November 18, 2011 Complaint is time-barred.

III.

For the foregoing reasons, we will affirm the District Court's order granting the motion to dismiss.