Revised July 13, 1999

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 98-20918

Summary Calendar
_____

In the Matter of:  JEFFREY A GOFORTH,

　　　　Debtor,

-------------------------

ERNEST JAY HALL,

　　　　　　Appellee,

　v.

JEFFREY A GOFORTH,

　　　　　　Appellant.

-------------------------
_____

Appeal from the United States District Court
for the Southern District of Texas
_____
July 9, 1999

Before KING, Chief Judge, and WEINER and DENNIS, Circuit Judges.

PER CURIAM:

　　Appellant Jeffrey A. Goforth appeals the final judgment of the district court, which affirmed the bankruptcy court's order granting appellee Ernest Jay Hall's summary judgment motion and denying Goforth's summary judgment motion on the ground that 11

1

U.S.C. § 502(b)(7) does not limit Hall's claim against Goforth. We affirm.

## I.   FACTUAL AND PROCEDURAL HISTORY

In April 1993, appellee Ernest Jay Hall, the majority shareholder of a company known as Teleometrics, contracted to sell his shares to appellant Jeffrey A. Goforth.  The Integrated Agreement provided that Goforth was to become the majority shareholder of Teleometrics by purchasing fifty-eight shares of Teleometrics stock, while Teleometrics redeemed its remaining outstanding shares from Hall through the issuance of promissory notes to Hall.  Goforth fully performed his only individual obligation under the Integrated Agreement, to purchase the fifty-eight shares, in April 1993.  The signatories to the Integrated Agreement included Hall, David Dollahite, as president of Teleometrics, and Goforth, in his individual capacity as purchaser.

In connection with the Integrated Agreement, the parties executed an employment agreement (Employment Agreement) to retain Hall as an employee of Teleometrics.  The signatories to the Employment Agreement were Hall, in his individual capacity, and Teleometrics.  Goforth executed the Employment Agreement on behalf of Teleometrics in his new capacity as president of the company.  He did not sign the Employment Agreement in his individual capacity.

2

Approximately five months after the sale, numerous problems between Hall and Goforth culminated in Hall's termination. Hall sued Goforth and Teleometrics for wrongful termination, and the case was referred to arbitration. On August 29, 1994, the arbitrator issued an award in the amount of $1,127,237 against Goforth and Teleometrics jointly and severally. The arbitrator did not issue findings and did not apportion the damages between those deriving from the Integrated Agreement and those deriving from the Employment Agreement.

On January 23, 1995, a Texas state court entered a judgment based on the arbitration award (the judgment). Like the arbitrator's award, the judgment did not apportion the damages between the two agreements. On December 28, 1995, the Texas Court of Appeals affirmed the judgment on the ground that Teleometrics had not timely moved to vacate the arbitrator's award.

On February 8, 1995, both Teleometrics and Goforth filed for Chapter 11 bankruptcy protection in the Bankruptcy Court for the Western District of Washington. Hall filed identical claims for the full amount of the judgment in both cases. Both debtors objected to Hall's claims, requesting that the claims be limited under 11 U.S.C. § 502(b)(7). On May 22, 1995, Hall initiated adversary proceedings to determine the applicability of 11 U.S.C. §§ 502(b)(4) and 502(b)(7) to his claims.

During pretrial conferences in the Teleometrics adversary

3

proceeding, the issue arose whether the judgment was based on the Integrated Agreement, the Employment Agreement, or some combination of the two. The parties agreed that approximately $300,000 of the judgment derived from the Integrated Agreement and was a secured claim,[1] and that the remaining $827,000 derived from the Employment Agreement and was an unsecured claim. The Bankruptcy Court for the Western District of Washington subsequently transferred the cases to the Bankruptcy Court for the Southern District of Texas (the bankruptcy court).

Thereafter, the bankruptcy court held that § 502(b)(7) limited Hall's $827,000 unsecured claim against Teleometrics to $192,000 because Hall was an employee of Teleometrics and his claim arose out of the breach of an employment contract. Hall is seeking to recover from Goforth the balance of the unsecured claim.

On March 21, 1997, Goforth filed a summary judgment motion in his adversary proceeding, arguing that § 502(b)(7) limits Hall's claim against Goforth just as it limited Hall's claim against Teleometrics. On April 14, 1997, Hall filed his response and a cross-motion for summary judgment. On December 2, 1997, the bankruptcy court issued its opinion, which denied Goforth's summary judgment motion and granted Hall's summary judgment

---

[1] Teleometrics's confirmed plan provided for the payment of this secured claim. Hall has since received all payments due him on this claim.

4

motion. The bankruptcy court held that § 502(b)(7) does not limit Hall's unsecured claim against Goforth. On September 17, 1998, the district court affirmed and entered final judgment allowing Hall's unsecured claim against Goforth. Goforth timely appeals.

## II. STANDARD OF REVIEW

We review the bankruptcy court's grant of Hall's motion for summary judgment as though it had been directly appealed to us. See Charrier v. Security Nat'l (In re Charrier), 167 F.3d 229, 232 (5th Cir. 1999). Our review of the grant of a summary judgment motion is de novo. See Southmark Corp. v. Coopers & Lybrand (In re Southmark Corp.), 163 F.3d 925, 928 (5th Cir. 1999); Lynch Properties, Inc. v. Potomac Ins. Co., 140 F.3d 622, 625 (5th Cir. 1998). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).

## III. DISCUSSION

Goforth argues that the bankruptcy court and the district court erred by holding that § 502(b)(7) does not limit Hall's claim against him. Both courts interpreted § 502(b)(7) to apply only to the claims of an employee of the debtor. Because Hall

5

was employed by Teleometrics, not Goforth, the bankruptcy court and the district court found that § 502(b)(7) does not limit Hall's claim against Goforth.  Goforth challenges this conclusion, arguing that the language of the statute does not limit its application to employees of the debtor and that nothing in the legislative history compels this conclusion.  He contends that § 502(b)(7) applies to any employee who claims damages from the termination of an employment agreement regardless of whether the debtor against whom the claim is brought is the actual employer and that the critical inquiry is whether the debtor is directly liable for the claimed damages.

Section 502(b)(7) provides:

(b) [T]he court, after notice and a hearing, shall determine the amount of . . . [a] claim . . . as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that--

. . . .

(7) if such claim is the claim of an employee for damages resulting from the termination of an employment contract, such claim exceeds--

(A) the compensation provided by such contract, without acceleration, for one year following the earlier of--

(i) the date of the filing of the petition; or
(ii) the date on which the employer directed the employee to terminate, or such employee terminated, performance under such contract; plus

(B) any unpaid compensation due under such contract, without acceleration, on the earlier of such dates.

11 U.S.C. § 502(b)(7).

The plain language of the statute supports Goforth's position. The language of the statute does not state that it applies only where the debtor is the actual employer of the claimant. Instead, it states that it applies to claims "of an employee for damages resulting from the termination of an employment contract." Id. Goforth contends that the only conditions specified by § 502(b)(7) are met--Hall is an employee who claims damages resulting from the termination of an employment contract. According to Goforth, § 502(b)(7) can be used by anyone who is directly liable for damages resulting from the termination of an employment contract. He argues that § 502(b)(7) applies in his case because he is liable for employment contract damages by virtue of the state court judgment.

Although the bankruptcy court acknowledged that the plain language of § 502(b)(7) does not clearly preclude its application to Goforth's case, the court read into the statute the requirement that the claimant must be an employee of the debtor. It reasoned that if Congress had not intended to limit § 502(b)(7) to situations where the debtor is also the employer, it could have used the term "person" instead of "employee." According to the bankruptcy court, Goforth's interpretation would render the term "employee" superfluous.

Goforth responds that the term "employee" is not superfluous

under his reading of the statute because the term was added to clarify that § 502(b)(7) does not apply to derivative claims, but only to the claims of actual employees. In its original form, the language of the provision made it applicable to claims "for damages resulting from the termination of an employment contract." 11 U.S.C. § 502(b)(8) (1978);[2] see In re Wilson Foods Corp., 182 B.R. 278, 281 (Bankr. D. Kan. 1995). The 1984 amendments to the Bankruptcy Code added language to the provision, so that the language of the current version makes it applicable to claims "of an employee for damages resulting from the termination of an employment contract." 11 U.S.C. § 502(b)(7) (emphasis added); see In re Wilson Foods, 182 B.R. at 281. According to one court, the 1984 amendments added the language "for clarity 'and to eliminate the possibility that some third party, such as a dependent of a former employee or a third-party contractor might assert a claim hereunder.'" In re Wilson Foods, 182 B.R. at 281 (quoting Norton Bankruptcy Code Pamphlet 1994-1995 Edition (Revised) § 502(b) Editor's Comment at 379 (1995)). Thus, the term "employee" is not without meaning under Goforth's interpretation of the statute.

The bankruptcy court also relied on Johnson v. Beck (In re Johnson), 117 B.R. 461 (Bankr. D. Minn. 1990), in support of its

_____

[2] By virtue of the 1984 amendments to the Bankruptcy Code, the numbering of this provision changed from § 502(b)(8) to § 502(b)(7). See In re Wilson Foods Corp., 182 B.R. 278, 281 n.20 (Bankr. D. Kan. 1995).

holding that § 502(b)(7) does not apply in Goforth's case. In <u>In re Johnson</u>, the claimant, Beck, was an employee of the debtor corporation whose claims arose out of the breach of an employment agreement between Beck and the corporation. <u>See</u> <u>id.</u> at 463. The individual debtor, Johnson, had executed a consent to and guaranty of the contract as the corporation's majority shareholder. <u>See</u> <u>id.</u> at 464. Beck was terminated and sued in state court seeking a declaratory judgment and actual and punitive damages. <u>See</u> <u>id.</u> His theories of recovery included breach of contract by both Johnson and the corporation, Johnson's tortious interference with his contractual relations with the corporation, Johnson's breach of fiduciary duty as majority shareholder to Beck as minority shareholder, and Johnson's wrongful dilution of Beck's shares. <u>See</u> <u>id.</u> Johnson and the corporation thereafter filed for Chapter 11 protection, and Johnson initiated an adversary proceeding to determine whether § 502(b)(7) limited the allowability of Beck's claims in his case. <u>See</u> <u>id.</u>

The court first held that § 502(b)(7) did limit Beck's claim against the corporation deriving from the corporation's breach of the employment contract, but did not limit Beck's claims against the corporation on his other theories of recovery. <u>See</u> <u>id.</u> at 468. The court then held that § 502(b)(7) did not limit any of Beck's claims against Johnson. <u>See</u> <u>id.</u> at 469-71. With reference to Beck's claim against Johnson deriving from Johnson's

9

alleged tortious interference with Beck's employment relations, the court stated that "the whole tenor of § 502(b)(7) is such as to limit it to claims against debtors which were the employers in contractual privity with the employee-claimant under the contract in question." Id. at 469. Thus, the court reasoned that § 502(b)(7) does not apply to claims for interference with an employment contract by someone who was not a party to the contract. See id. at 470. The court sought to avoid reading the application of § 502(b)(7) broadly because the provision "is in derogation of the general bankruptcy-law principle that creditors are to share ratably in a debtor's estate, according to the priorities established under the Bankruptcy Code." Id. at 469-70.

Because Johnson had personally guaranteed the employment contract, the court went on to examine whether § 502(b)(7) limited Beck's claim arising from Johnson's alleged breach of his personal guaranty. The court held that § 502(b)(7) did not apply "because the terminated employment relationship did not run between Johnson and Beck, and Johnson hence was not directly entitled to the protection of the statute." Id. at 470. In reaching its conclusion, the court examined the nature of personal guaranties, and concluded that, as guarantor, Johnson would be liable for the full amount due under the contract notwithstanding any limitation on its allowability in the corporation's case. See id. at 470-71. The court therefore held

10

that § 502(b)(7) does not limit the claim of an employee against the guarantor of an employment contract. See also In re Danrik, Ltd., 92 B.R. 964, 972 (Bankr. N.D. Ga. 1988) (holding that comparable provision, § 502(b)(6), does not literally apply to limit claims of landlord against guarantor-debtor, and that equities weigh against limiting claim); Kopolow v. P.M. Holding Corp. (In re Modern Textile, Inc.), 28 B.R. 181, 188 (Bankr. E.D. Mo. 1983) (holding that § 502(b)(7), then called § 502(b)(8), does not limit claim of employee against guarantors of employment contract). But see In re Farley, Inc., 146 B.R. 739, 745 (Bankr. N.D. Ill. 1992) (holding that § 502(b)(6) does limit the claim of landlord against guarantor-debtor); In re Interco Inc., 137 B.R. 1003, 1007 (Bankr. E.D. Mo. 1992) (same); In re Revco D.S., Inc., 138 B.R. 528, 531 (Bankr. N.D. Ohio 1991) (same); In re Rodman, 60 B.R. 334, 334-35 (Bankr. W.D. Okla. 1986) (same).

Although Goforth did not personally guarantee the Employment Agreement between Hall and Teleometrics, by virtue of the state court judgment he has been found jointly and severally liable for the damages flowing from the breach of that agreement. Thus, he is similar to a guarantor in that he is responsible for the damages that are not recoverable from Teleometrics. See In re Johnson, 117 B.R. at 470 ("'Generally, the purpose of a guaranty is to provide payment when for any reason the principal debtor fails to discharge his obligations.'") (quoting Victory Highway Village, Inc. v. Weaver, 634 F.2d 1099, 1102 (8th Cir. 1980)

11

(applying Minnesota law)). Thus, In re Johnson provides support for not limiting Hall's claim under § 502(b)(7).

After consideration of the arguments and authorities, we hold that Goforth is not entitled to limit Hall's claim against him under § 502(b)(7). A state court judgment affirming an arbitrator's finding that Goforth is jointly and severally liable for amounts due under two agreements, only one of which was an employment agreement, does not entitle Goforth to take advantage of the limitation of § 502(b)(7). Goforth was not Hall's employer, and is more like a guarantor. Thus, mindful of our duty to avoid reading broadly provisions such as § 502(b)(7), see In re Johnson, 117 B.R. at 469-70; see also Vanston Bondholders Protective Comm. v. Green, 329 U.S. 156, 161 (1946) ("A purpose of bankruptcy is so to administer an estate as to bring about a ratable distribution of assets among the bankrupt's creditors."); Haber Oil Co. v. Swinehart (In re Haber Oil Co.), 12 F.3d 426, 435 (5th Cir. 1994) ("It has been well and often said that ratable distribution among all creditors is one of the strongest policies behind the bankruptcy laws.") (internal quotation marks omitted), we conclude that § 502(b)(7) does not apply in this case.

Goforth argues that the conclusion that § 502(b)(7) does not apply ignores the state court judgment finding Goforth directly liable to Hall on the Employment Agreement, and thus runs afoul of the Full Faith and Credit Clause. This argument lacks merit.

12

The state court judgment merely affirms the arbitrator's decision and made no determination whether Goforth was entitled to the limitation of § 502(b)(7). The arbitrator's decision similarly did not examine the applicability of § 502(b)(7). The only determination it made was that Goforth is jointly and severally liable for the amount due under the Integrated Agreement and the Employment Agreement. We need not challenge this conclusion in order to decide that Goforth is not entitled to limit his liability under § 502(b)(7). Thus, our determination does not call into question the state court judgment.

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.