In re CONTINENTAL AIRLINES, INC., et al., Debtors.

James Baldridge, William Mann, and Larry Dunn, individually, and as representatives of a class of persons similarly situated who are referred to as the L.P.P. Claimants, Plaintiffs,

v.

Continental Airlines Holdings, Inc., Continental Airlines, Inc., and System One Holdings, Inc., Defendant.

Bankruptcy Nos. 90–932 (MFW) through 90–984 (MFW).
Adversary No. A–99–412 (MFW).

United States Bankruptcy Court, D. Delaware.

Oct. 12, 2000.

Jon A. Geier, Paul Hastings Janofsky & Walker, LLP, Washington, DC, James L. Patton, Jr., Robert S. Brady, Matthew P. Denn, Young Conaway Stargatt & Taylor, LLP, Wilmington, DE, for Continental Airlines, Inc.

Myles J. Tralins, Tralins & Associates, Miami, Fl, Bruce E. Jameson, Prickett Jones & Elliott, Wilmington, DE, for LPP Claiments.

## OPINION[1]

MARY F. WALRATH, Bankruptcy Judge.

The issue before the Court is whether the Plaintiffs' claims are limited by 11 U.S.C. § 502(b)(7). We hold that they are and, consequently, deny the Plaintiff's Motion for Summary Judgment.

## I. JURISDICTION

This Court has jurisdiction over these proceedings pursuant to 28 U.S.C. §§ 1334 and 157(b)(1), (b)(2)(A), (B) and (O).

## II. FACTUAL BACKGROUND[2]

On February 23, 1986, Eastern Airlines ("Eastern") and the Air Lines Pilots Association ("the Pilots' Union")[3] ratified a collective bargaining agreement ("the CBA"), which included the Labor Protective Provisions ("the LPP"). The LPP provides essentially that upon a merger with any other airline, the Eastern pilots will be integrated with the other airline's pilots in such a way as to preserve their seniority. One day later, Texas Air Corporation, the parent of Continental Airlines, Inc. ("the Debtor" or "Continental") acquired Eastern. After Continental acquired Eastern, the Pilots' Union sought enforcement of the LPP. Continental refused to integrate the Eastern pilots, and the Pilots' Union sought arbitration. Continental subsequently filed bankruptcy in December, 1990.

The Eastern pilots raised objections to the Debtor's proposed Plan of Reorganization because they asserted that they were entitled to specific performance of the LPP. Continental asserted that the Eastern pilots' rights constituted claims in bankruptcy which could be treated and discharged by the Debtor's Plan of Reorganization through payment of the claim, rather than the equitable remedy of specific performance. The Bankruptcy Court agreed and confirmed the Debtor's Plan. The District Court affirmed. That issue

---

1. This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052.

2. The factual background of this case has been recited a number of times by this Court, the District Court and the Court of Appeals for the Third Circuit. *See, e.g., Air Line Pilots Assoc. v. Continental Airlines (In re Continental Airlines )*, 125 F.3d 120 (3d Cir.1997). We recite herein only those facts which are essential to deciding the issue presently before the Court.

3. Part of the complicated procedural background in this case is the splintering of the Pilots' Union, into a number of factions, some of whom have settled and are therefore not parties to this action. This decision is, of course, binding only upon those members who remain parties.

was appealed to the Court of Appeals for the Third Circuit which held that the Eastern pilots' equitable claims for seniority integration could be converted into money damages and discharged by the Debtor's Plan. 125 F.3d at 131–36.

Since the Third Circuit decision, a group of the Eastern pilots, the Plaintiffs herein, initiated this adversary proceeding in which they seek a declaration that their claims are not limited by section 502(b)(7) of the Bankruptcy Code. In their motion for summary judgment, the Plaintiffs argue that the Debtor is bound by the law of the case, including statements made by this Court and the Third Circuit which, they allege, mandate that the Plaintiffs are to be "made whole." The Plaintiffs also argue that section 502(b)(7) does not apply because they are not "employees" of the Debtor and the CBA is not an "employment contract."

At the hearing on the Plaintiffs' motion, an individual Eastern pilot, J. Trigg Adams, appeared and asked to be heard. Neither the Debtor nor the Plaintiffs objected and we allowed Mr. Adams to make a statement and file a brief in support of the Plaintiffs' Motion for Summary Judgment. Because Mr. Adams is pro se, we interpret his pleadings liberally. Mr. Adams joins in each of the Plaintiffs' arguments and raises an additional argument: the Debtor's bad faith and abuse of the bankruptcy system.[4]

The Debtor's brief responds to each of the Plaintiffs' arguments, but the Debtor did not have the opportunity to respond to the arguments contained in Mr. Adams' brief.

## I. DISCUSSION

### A. The Law of the Case

The Plaintiffs argue that the Third Circuit's August 29, 1997, opinion and this Court's June 28, 1999, decision have created law of the case which binds this Court to a determination that the Debtor must "make the Plaintiffs whole."

■ The law of the case doctrine provides that when a court decides a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case. See Deisler v. McCormack Aggregates, Co., 54 F.3d 1074 (3d Cir.1995); In re Resyn Corp., 945 F.2d 1279, 1281 (3d Cir.1991); Devex Corp. v. General Motors Corp., 857 F.2d 197, 199 (3d Cir.1988). Therefore, if either this Court or the Third Circuit has decided the issue, we should not revisit the issue. In this instance, we do not find the law of the case applicable.

The Plaintiffs assert that when the Third Circuit stated that "seniority integration is a 'make whole' remedy, the purpose of which is to restore the employee to the economic status quo," it was deciding the amount which the Eastern pilots were entitled to receive as claims in bankruptcy. 125 F.3d at 135. We disagree.

In its decision, the Third Circuit's focus was whether a monetary remuneration would satisfy the Eastern pilots' claims for specific performance. Id. at 124. The Third Circuit initially addressed whether a non-monetary remedy could be converted to a "claim" as defined by section 101(5) of the Bankruptcy Code. After reviewing Ohio v. Kovacs, 469 U.S. 274, 105 S.Ct. 705, 83 L.Ed.2d 649 (1985), and In re Torwico, 8 F.3d 146 (3d Cir.1993), the Third Circuit stated that the issue which it had to decide was "whether a monetary payment was an alternative to the equitable remedy of seniority integration." Id. at 133. The Court concluded that it was and, therefore, held that the Eastern pilots had "claims" which may be dischargeable under the Bankruptcy Code. .

---

4. Mr. Adams also raises issues concerning the Eastern pilots' right to arbitration under the Railroad Labor Act. Since the Third Circuit decision expressly allowed individual Eastern pilots to proceed to arbitration to decide whether they had claims for seniority integration under the LPP, we need not address this issue again. 125 F.3d at 129–30.

However, the Third Circuit was careful to note that it did not intend to suggest what award should be granted to the Eastern pilots, or its amount, and its holding was "limited to how the claim should be treated in bankruptcy." *Id.* at 136. In other words, the Third Circuit's holding was that the Eastern pilots had "claims" as defined by the Code, which may be treated and discharged in bankruptcy. The Third Circuit did not address the issue of whether the Code otherwise limits the size of those claims, including any limitation under section 502(b)(7).

In fact, by the very nature of the Third Circuit's ruling, it specifically did not assure the Plaintiffs that they would receive payment in full. By concluding that the Eastern pilots held "claims" under the Bankruptcy Code, the Third Circuit ruled that those claims were subject to compromise in the plan confirmation process. In fact, the Third Circuit was aware that those claims would *not* be paid in full under the Debtor's confirmed Plan of Reorganization.[5]

Thus, the Third Circuit's conclusion that the Eastern pilots' claims in bankruptcy were a "make whole" remedy for their right to seniority integration was not a decision that their claims had to be paid in full in the Debtor's Plan. Similarly, we have not previously addressed or decided that issue. We therefore conclude that the doctrine of the law of the case does not bar us from considering whether section 502(b)(7) applies.

### B. *The Effect of 502(b)(7)*

Section 502(b)(7) provides:

(b) [T]he court, after notice and a hearing, shall determine the amount of ... [a] claim ... as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that –

. . .

(7) if such claim is the *claim of an employee* for damages resulting from the *termination of an employment contract,* such claim exceeds –

(A) the compensation provided by such contract, without acceleration, for one year following the earlier of –

(i) the date of the filing of the petition; or

(ii) the date on which the employer directed the employee to terminate, or such employee terminated, performance under such contract; plus

(B) any unpaid compensation due under such contract, without acceleration, on the earlier of such dates.

11 U.S.C. § 502(b)(7) (emphasis added).

The Plaintiffs assert that section 502(b)(7) does not apply for two reasons: the CBA was not an employment contract, and the Plaintiffs were never "employees" of the Debtor.

### 1. *The CBA Was an Employment Contract*

■ The Plaintiffs cite a number of cases in support of their argument that the CBA is not an employment agreement. *See, e.g., John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 550, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964); *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 578–79, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960) ("a collective bargaining agreement is not an ordinary contract ... it is a generalized code to govern a myriad of cases which the draftsmen cannot wholly anticipate ... the collective agreement covers the whole employment contract"). Mr. Adams' brief suggests that a collective bargaining agreement cannot, per se, be an employment contract.[6]

---

5. The Debtor's Plan which was confirmed by Order of this Court dated April 16, 1993, included four classes of general unsecured claims. All of the classes were impaired, that

is, they were not receiving payment in full of their claims.

6. The Plaintiffs also cite *In re Gee & Missler Svcs., Inc.,* for the general rule that a collec-

However, the Supreme Court has stated that:

> Collective bargaining between employer and the representatives of a unit, usually a union, results in an accord as to terms which will govern hiring and work and pay in that unit. The result is not, however, a contract of employment *except in rare cases.*

*J.I. Case Co. v. Nat'l Labor Relations Board,* 321 U.S. 332, 334–35, 64 S.Ct. 576, 88 L.Ed. 762 (1944) (emphasis added).

■ *J.I. Case* requires us to determine on a case-by-case basis whether a collective bargaining agreement constitutes an employment agreement. *See, e.g., Heheman v. E.W. Scripps Co.,* 661 F.2d 1115, 1118–19, 1123 (6th Cir.1981) (after examining a section of a collective bargaining agreement titled "Job Security," the Court concluded that the collective bargaining agreement at issue was one of the rare exceptions discussed in *J.I. Case* ). We, therefore, look to the specific language of the CBA which has been the center of the controversy between the Debtor and the Plaintiffs.

■ In this case, the key provision of the Collective Bargaining Agreement is Section 3 of the LPP, which provides, in relevant part:

> Insofar as the merger affects the seniority rights of the carriers' employees, provisions shall be made for the integration of seniority lists in a fair and equitable manner . . . .

The Pilots' Union has consistently urged that this provision is a contract to employ the Eastern pilots according to the seniority which they had achieved at Eastern. In the event of a merger, they assert Section 3 provides a contractual obligation for the employment of the Eastern pilots, at the salary and benefit level determined by their seniority rights. Moreover, it is that very right which has given rise to the Plaintiffs' claims in this case. Therefore, we conclude that the Collective Bargaining Agreement between these parties is an "employment contract" as used in section 502(b)(7).[7]

The Plaintiffs cite a number of cases in which a collective bargaining agreement was held not to be an employment agreement for the purpose of determining the amount of an allowed claim under section 502(b)(7). *See, e.g., United Steelworkers of America v. Cortland Container Corp.,* 105 B.R. 375 (N.D.Ohio 1989); *U.S. Truck Co., Inc. v. Teamsters Nat'l Freight Indus. Negotiating Comm. (In re U.S. Truck Co., Inc.),* 89 B.R. 618 (E.D.Mich.1988); *Folsom v. Prospect Hill Resources, Inc. (In re Prospect Hill Resources, Inc.),* 837 F.2d 453 (11th Cir.1988). We find those cases distinguishable.

In *U.S. Truck,* the Court specifically found that, unlike the case sub judice, the collective bargaining agreement was not a guarantee of employment. 89 B.R. at 624. Even after the CBA was rejected, the employees did not lose their jobs, but continued to be employed. *Id.* at 628. Thus, it was not the CBA that guaranteed the claimants' employment. Consequently, the Court found that section 502(b)(7) did not apply. *Id.* at 624. Here, by contrast, the Plaintiffs' sole claim to employment by the Debtor is based on the LPP; the LPP must, therefore, be an employment contract.

In *Cortland,* the Court held that section 502(b)(7) [8] did not apply because, to constitute an employment contract, the collective bargaining agreement must "at the very least, provide for the employment relation-

---

tive bargaining agreement may not be an employment contract. 62 B.R. 841, 843–44 (Bankr.E.D.Mich.1986).

**7.** We are cognizant of the Third Circuit's decision that the arbitrator is to decide whether the Eastern pilots have any claim against the

Debtor under the CBA. Therefore, our decision is limited to deciding the nature and limits of that claim, if any.

**8.** *Cortland* actually refers to subsection 502(b)(8) which is the same statute as § 502(b)(7), save the additional language

ship itself, and not merely formulate the contours of conduct for the parties to such a relationship." 105 B.R. at 379. The Court found that the agreement at issue in that case, titled "Health Insurance Agreement," was not an employment contract, but one which provided insurance benefits to its employees and retired workers. *Id.* at 378. The LPP in this case does, in fact, provide the basis for the Plaintiffs' claim of entitlement to employment, as well as define the terms of their employment (at their current seniority levels at Eastern). Therefore, we find *Cortland* distinguishable.

We also do not find *Folsom* applicable. In *Folsom*, the issue was whether a retired corporate officer's retirement benefits were limited by section 502(b)(7). 837 F.2d at 454. The Court found that, on its face, section 502(b)(7) refers to claims by employees, not retired workers. *Id.* at 455 (citing *Allied Chemical and Alkali Workers of America, Local Union No. 1 v. Pittsburgh Plate Glass Co., Chemical Division,* 404 U.S. 157, 168, 92 S.Ct. 383, 30 L.Ed.2d 341 (1971)). Therefore, it held that section 502(b)(7) did not apply.

We conclude that the LPP did constitute an employment contract for purposes of section 502(b)(7) because it is the basis of the Plaintiffs' claim to employment by the Debtor and defines the terms of their employment.

### 2. The Plaintiffs Were Employees

The Plaintiffs also argue that section 502(b)(7) is inapplicable to them because they were never employees of the Debtor.[9] Our analysis necessarily begins with the language of section 502(b)(7). *See United States v. Ron Pair Enterprises,* 489 U.S. 235, 241, 109 S.Ct. 1026, 103

L.Ed.2d 290 (1989). It is axiomatic that we should give effect to the plain language of the statute except where such an interpretation is at odds with the legislative intent. *Id.* at 242, 109 S.Ct. 1026; *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 571, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982).

The Plaintiffs cite three cases in support of their position that the term "employee" should be strictly construed: *Hall v. Goforth (In re Goforth),* 179 F.3d 390, 393 (5th Cir.1999), *In re Prospect Hill Resources, Inc.,* 837 F.2d 453 (11th Cir.1988); *In re Lavelle Aircraft Co.,* Bankr.No. 94–17496–DWS, 1996 WL 226852 (Bankr. E.D.Pa. May 2, 1996). Each of those cases is factually distinguishable.

In *Goforth,* the Court concluded that the claim against the Debtor was as a guarantor not as an employer. 179 F.3d at 395. However, the *Goforth* Court noted that "the language of section 502(b)(7) does not state that it applies only where the debtor is the actual employer of the claimant. Instead, it applies to claims of an employee for damages resulting from the termination of an employment contract." *Id.* at 393 (internal quotes omitted). In this case, the Plaintiffs assert that the Debtor is liable not as a guarantor but as their prospective employer. Clearly, their claims are claims of employees.[10]

The Plaintiffs assert that a conclusion that they are employees would fail to give effect to every word of the statute. *See United States v. Nordic Village, Inc.,* 503 U.S. 30, 36, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992); *First Bank Nat'l Assoc. v. Fed'l Deposit Ins. Corp.,* 79 F.3d 362, 367 (3d Cir.1996) ("if possible, a court should construe a statute to avoid rendering any element of it superfluous"). We find that our reading does not render any word

---

which is discussed in Part (B)(2) of this decision.

9. The parties assert that the other side should be estopped from taking their present positions because it is diametrically opposed to their prior positions. That is, the Debtor previously argued that the Eastern pilots were not employees and the Eastern pilots argued

that they were employees. We cannot estop both of them, and since no court has decided the issue, we address the issue *de novo.*

10. The claimants in *Lavelle* and *Prospect Hill* were retirees whose claims arose from retirement benefits. Therefore, we conclude that these two decisions have little, if any, precedential value to this case.

superfluous. Under our interpretation, the word "employee" identifies the type of claim and limits the parties whose claims are capped.

Such a reading is in accord with the scant legislative history of the section. *See In re Wilson Foods Corp.*, 182 B.R. 278, 281 (Bankr.D.Kan.1995). When originally enacted, subsection (b)(6) read, in relative part, "if such claim is for damages resulting from the termination of an employment contract." The addition of the qualifying language "of an employee" was added in 1984, however the legislative history from the 1984 amendments is terse:

> Paragraph (8) is new. It tracks the landlord limitation on damages provision in paragraph (7) for damages resulting from the breach by the debtor of an employment contract, but limits the recovery to the compensation reserved under the employment contract for the year following the earlier of the date of the petition and the termination of employment.

H.R. Rep. No 595, 95th Cong., 1st Sess. 354 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5963, 6310; S.Rep. No. 989, 95th Cong., 2d Sess. 64 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5850–5851.

At least one commentator stated that the 1984 additions were made to eliminate the possibility that third parties, including dependants of an employee or third party contractors, might assert a claim under that section. *See* Norton Bankruptcy Code Pamphlet 1994–95 Edition (Revised) § 502(b), Editor's Comment at 379 (1995).

We also note, by analogy, that a number of courts have concluded in interpreting subsection 502(b)(6),[11] the provision which (b)(7) "tracks," that it is the *nature* of the claim that is the relevant inquiry. *See, e.g., In re Episode USA, Inc.*, 202 B.R. 691, 694 (Bankr.S.D.N.Y.1996); *In re Interco Inc.*, 149 B.R. 934, 940–41 (Bankr. E.D.Mo.1993) (both holding that the claims of landlords were subject to the limitation of section 502(b)(8) where the debtors were not tenants, but guarantors of nondebtors).

Similarly, we conclude that it is the nature of the claim that is the relevant question under section 502(b)(7). The central purpose of that section is to strike a balance between creditors with long-term employment contracts resulting in large unsecured claims and other unsecured creditors, all of whom seek payment of their claims from a pool of assets which is often too meager. *See Wilson Foods*, 182 B.R. at 281. The additional language enacted in the 1984 amendments does not exclude the Plaintiffs' claims from the provisions of subsection 502(b)(7), because those claims are fundamentally claims of employees for breach of an employment contract.

The Plaintiffs agreed to a CBA which, they assert, required the Debtor to employ them according to their seniority rights. We find that it would be absurd to conclude that their claims derive from the termination of that contract, but that they are not employees simply because the contract was breached one day prior to the beginning of work under that contract. Because the contract at issue was a contract for *their* employment, we conclude that they are "employees" for purposes of section 502(b)(7).

---

**11.** Section 502(b)(6) provides that the Court shall allow a claim in its full amount except to the extent that:

> (6) if such claim is the claim of a lessor for damages resulting from the termination of a lease of real property, such claim exceeds—
>
> > (A) the rent reserved by such lease, without acceleration, for the greater of one year, or 15 percent, not to exceed three years, of the remaining term of such lease, following the earlier of –

> > (i) the date of the filing of the petition; and
> > (ii) the date on which such lessor repossessed, or the lessee surrendered, the leased property; plus
> >
> > (B) any unpaid rent due under such lease, without acceleration, on the earlier of such dates.

11 U.S.C. § 502(b)(6).

### C. Allegations of the Debtor's Bad Faith and Abuse of the Bankruptcy System

Mr. Adams zealously excoriates the Debtor for its "egregious ... misuse of the [Bankruptcy Code]" which he characterizes as an "apotheosis of abuse." Mr. Adams recites, inter alia, the long history of this case, the Debtor's willingness to litigate similar issues in a number of courts, and alleged deceptions made by the Debtor, including its willingness to employ some, but not all, of the former Eastern pilots.

We will not address the merits of Mr. Adams' factual allegations, except to note that the Court takes judicial notice of the long history of this case and is mindful of the impact which this decision has upon creditors, including the Eastern pilots. We are, of course, concerned with maintaining the integrity of the judicial system and the Bankruptcy Code. However, Mr. Adams presented no evidence to support his assertion and the allegations are unrelated to the issue before the Court.

■ To the extent Mr. Adams is asserting that the Debtor is acting in bad faith by asserting the Plaintiffs' claims are capped by section 502(b)(7), we reject that argument. It is not bad faith for a debtor to assert rights given to it under the Bankruptcy Code. *See, e.g., In re James Wilson Assoc.*, 965 F.2d 160, 170 (7th Cir. 1992) ("It is not bad faith to seek to gain an advantage from declaring bankruptcy"); *Street v. Lawson (In re Street)*, 55 B.R. 763, 764–65 (9th Cir. BAP 1985) (it is not, per se, bad faith to seek to discharge otherwise nondischargeable debt through Chapter 13).

■ To the extent Mr. Adams is asserting that the Debtor is acting in bad faith in this case on a broader scale, that argument is barred by the equitable doctrine of laches and law of the case. This bankruptcy case was commenced on December 3, 1992. There have been a number of opportunities for Mr. Adams or any other creditor to raise the issue of the Debtor's bad faith. For example, any creditor, including Mr. Adams, could have filed a motion to dismiss or convert the Debtor's bankruptcy case under section 1112(b).

Ultimately, the issue of the Debtor's good or bad faith was decided when the Court confirmed the Debtor's Chapter 11 Plan. To confirm the Plan, this Court, a fortiori, found that the Plan complied with the applicable provisions of the Bankruptcy Code, that the proponent of the Plan complied with the applicable provisions of the Bankruptcy Code, and that the Plan was proposed in good faith. *See* 11 U.S.C. § 1129(a)(1)-(3). Therefore, this issue was already determined during the confirmation process and the Court will not address it again.

### III. CONCLUSION

For the foregoing reasons, we deny the Plaintiffs' motion for summary judgment and find that the Plaintiffs' claims are limited by section 502(b)(7) of the Bankruptcy Code.

An appropriate Order is attached.